All right, the next case is Clear Sky Car Wash versus City of Chesapeake, Virginia. And Mr. Grass will hear you, from you, when you're ready. Test the microphone first. Thank you. You can assume any position up here you want. That doesn't interfere with your vision. If you'd prefer, you can go further back, but if that's a good spot for you, that's okay. No, this will be just fine. Can the court hear me? Yes. Well, thank you. Your Honors, may it please the court, my name is Edward Grass, and I represent the plaintiffs and appellants in this matter, Clear Sky, including its owner, Sam Jackdon, and other individuals and entities. It's important in understanding this case to look at an overview of what's really going on before we dive down into the statutes, which I think are fairly clear and explain this overview well. The small business owner, Sam Jackdon, of a car wash business had the business taken and essentially bulldozed by what I refer to as the city partners, the City of Chesapeake, Virginia, Virginia Department of Transportation employees, U.S. Department of Transportation. Well, they condemned it for an expansion of the highway, right? Correct. Correct. And the question, the overview here that's very important is that traditionally, takings requirements up through the 1800s and early 1900s, it was just that simple. You came in and took the property and went immediately to a just compensation hearing. That's what it is now. Didn't they deposit the money into court, and you can challenge it under the condemnation proceeding, challenge the amount, but not the taking? Actually, no, that's not correct. There were pre-taking requirements that have to be met, and that included- But that's a state proceeding, right? Well, it's a requirement before the state proceeding begins, and it's a federal requirement because there are federal dollars going to the- I understand, but I'm trying to get at the core. Do you have a condemnation proceeding pending now? There is currently a condemnation proceeding pending. And in that condemnation proceeding, you can challenge the appraisal amount, can't you? The appraisal amount can be challenged. That's correct. And your argument is that the appraisal amount in that case, the state case, was arrived at in violation of federal standards that were imposed when federal monies are- That's partially correct. Because, again, we're jumping to the traditional just compensation phase. What the Uniform Act has done is require certain pre-taking things to happen in order to avoid unnecessary eminent domain just compensation litigation. So what the Uniform Act requires is an independent appraisal up front. It requires an independent review appraisal up front. It requires a discussion and correction of that appraisal when it's been identified to be an error, as happened here. And instead of getting that independent appraisal up front, it was a city agent who approved the review appraisal. And, in fact, it's the same city agent who is negotiating in the litigation. And if it's a totally low and improper appraisal, you can get it adjusted in the state proceeding. Exactly, except for one small problem that's a very big problem,  So what happens, and that's why you got exactly to the overview I wanted to get to, Your Honor, what's happening is the state, instead of getting a proper appraisal, can get a low-ball appraisal and then force the party into litigation. And one-third to 40% of that just compensation is going to go to attorney's fees rather than to just compensation. What Congress wanted to do in enacting the Uniform Act was say, let's not have unnecessary floodgates open to litigation. We need to have you up front have this neutral appraisal so that my client could say, good enough. Perfect. And, in fact, remember, there's a deposit of funds. So instead of the $2 million deposit. These standards are set up under Title III, and you have to demonstrate that Title III created a cause of action under which action will buy you. That is correct. That's the rub of your case, really. Right. Really what it gets down to under the Uniform Act is whether Section 4655 creates an enforceable right. And it's not me, really, that has to establish it. The Fourth Circuit already has established precisely what 4655 means. You know, the simple question of 4655 is whether or not there are requirements that are imposed upon the State. And this Court decided, and this is a quote from the City of Columbia versus Castle case, quote, it is unmistakable from the plain language of 4655 that the States must comply with the land acquisition procedures specified in 4651. Well, that imposes obligations on the State, but how does that translate into rights for individuals such as your client? Right, because those listed, those nine listed requirements in 4651 which are imposed on the States, which are then fleshed out in the regulations, require them. They shall provide an appraisal to this owner, to Clear Sky. They shall put a deposit into the Court for a proper independently reviewed appraisal. Why? So that Clear Sky can take it. Has there any case in the country created a cause of action under 4655? In terms of Section 1983 creating a right, there's not been a decision that says specifically it creates a right. There have been, for example, the Third Circuit in Pietrino said that 4625 under the Uniform Act created a right of action. That's different. That's different. That's relocation. Right. I'm talking about under the policy, 4655, which are the things that you argue were violated in this case. Right. The Whitman decision, which is specifically cited by the Fourth Circuit in its 4655 decision, said that allowed and found a cause of action under 4655 specifically. In that case, it was referring to the statutory provision 305. 305, 4655 are the same. And in that court, it said, look, based on these legislative intent cases, you can say that there's no cause of action against the Federal Government under 4651, but against the State there is a specific cause of action. That the elimination of the language indicates that Congress did not intend to preclude judicial review of agency actions under the URA other than 301 as to the Federal Government. So the court concluded review of agency actions under 305 is not precluded by statute, and the actions of the Federal Government are not committed to agency discretion. Section 305 requires the Federal agency to secure the necessary assurances, and that is reviewable as is the actions of the State. And really, it comes down to this 4655 issue, because their argument is, well, 4602 wipes out any ability to use 4655. But of course, if that were true, this Court's decision in City of Columbia v. Castle could not stand. If 4655 created no rights or liabilities, then the EPA in the Castle case could not have said it created rights and liabilities. And what the Court says, this Court said in Castle is, you must, the State, go out and follow these acquisition requirements. So once there's a right, and that's made very clear by City of Columbia v. Castle, it's very easy then to go to the EPA. That there's a right, and under the Administrative Procedure Act, we can decide that they abuse their discretion. You're throwing around a lot of stuff pretty loosely. Well, how so? The EPA needs a final agency action, and it's not designed. We have to resolve whether under the URA it creates a private cause of action. Before we get to a cause of action, you filed directly under Title III, and you also filed under Section 1983. And 1983 requires us to again go to URA to see if it creates a private cause of action. And in order to do that, we have to satisfy the Gonzaga case. Right. And I would say, first of all, to be clear, it requires that you find a right, not that you find a private cause of action. Just that there is a right that the State must comply with 4655. And in order for that to happen, the text of the statute, according to Supreme Court case law, must be phrased in terms of the person benefited. None of what you read is phrased in terms of the individual. Rather, it's phrased in terms of a mandate to agencies, both federal and state. Actually, that's not correct, and that's what the opposing brief gets wrong. They do not talk about what the individual actions are. And we laid those out in particular in our briefing that there are specific requirements that have to be followed. For example, I talked about the appraisal requirement. The list of nine required activities under 4651 that's imposed by 4655 says that an appraisal shall be provided to the owner to clear sky. That's talking about a directive to an agency. It doesn't say that an individual shall be benefited, at least not directly, as a result of that action. No, it's quite directly. What 4655 says is that, yes, the federal government has to get satisfactory assurances that the state will, in fact, do this under 4651. And 4651 says the nine requirements, you shall provide an appraisal to a specific owner. It's not a generic, for example, the Gonzaga and other cases that deal with a generic policy, like in blessing. Well, you should help disabled children generally. You should make sure it's generally being provided. You're eliminating a lot of the language. You're not facing the hard questions that are presented to you. 4155 said heads of federal agencies shall, to the greatest extent practical, be guided by the following policies. And then it lists the policies. It doesn't give these rights to individuals. I'm sorry. You're talking about 4651. Yes, but remember. And then 4655, which you referred to, notwithstanding any other law, the head of a federal agency shall not approve any program or project any grant to a contract or agreement, et cetera, unless he receives satisfactory insurances from acquiring agency that. And then it lists the requirements. Right. There's nothing in here that says individuals adversely affected by these policies are created a cause of action, as Gonzaga requires it to have. But the difference is, Your Honor, that 4655 says that the U.S. Department of Transportation will get satisfactory assurances that the state will, in fact, do the following. And 4651 says in number two, real property shall be appraised before negotiations. Well, why don't you read the introduction, what it says, the introduction, what that applies. Because 4651, the introduction there is not relevant. In other words, 4655 is applying the list and saying the federal government must make sure that the state follows this list. And it doesn't say, you know, appraise real property to the extent you can, provide an appraisal if you think it's a good idea. It says specifically that the owner, the owner, the single owner shall, or his representative, shall be given an opportunity to accompany, shall be given an appraisal. You disregarded the introduction, but if you read that with the introduction, it says, the heads of federal agencies shall, to the greatest extent practical, be guided by the following policy, to wit, that the owner and his designated representative shall be given the opportunity to accompany the appraiser. Right. And so that is the federal agency shall be governed by, to the extent it can, by that policy. Okay. That doesn't create a right in the owner. Well, again, Your Honor, you're looking at 4651 by itself. If this case only arose under 4651, that might be correct. But 4655, the effect of it is the federal agency shall require the state that the such acquiring agency, that's the city, shall in acquiring be guided to the greatest extent practical under state law by the land acquisition policies in 4651. So the precatory. Yeah, that's even clearer the other way. No, but that's true with all of them. This is why Gonzaga and all the other cases are so relevant. This is true with all of the federal requirements. Yes, USDOT has a role. The USDOT is supposed to require the satisfactory assurances that they give this appraisal, that they make the deposit. Where is the statement or the, and it has to be clear, according to the Supreme Court, where is the statement that Congress intended to give an individual a right to bring across a lawsuit for failure to follow these policies? That's, I believe, Your Honor, a misunderstanding of what the Supreme Court has said about 1983. All there has to be clear, unless Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement. Your Honor, the individual right, 4655, says federal government, you must make the states provide these individual rights. And there's a dual track here. There's no ability for my client to have, as was the case, for example, in the Sea Clambers case, there was an ability for the federal agency to impose civil and criminal penalties, to go in and have a hearing and get a record about the violation of a state that the federal government could then do. So because there's no ability for them to trigger this through the federal government, they have this right. The right is, again, Your Honor, it's the federal government imposes on the state these rights. And it doesn't say before initiating. It's a funding condition. The federal government is providing funds to Chesapeake City to acquire this property. Right. And in providing the funds, it requires that Chesapeake City follow these policies to the extent practicable. Exactly, which means to the extent not precluded by state law. So they must follow those rules. Now, tell me where you get the individual right to sue under those policies. Because it does not have to state a specific right to sue. In fact, not a single 1983 claim states a right to sue. Except Gonzaga said you have to have a right to sue under the underlying statute before you can rely on Section 183. You have to have a right. Because any statute that says you have an individual right to sue, 1983 is not even an issue. They will never say you have a right to sue. And I see I'm out of time. In the rebuttal, I can point out the actual Gonzaga cases. Okay. Let's see. We're going to hear first from Mr. Porter. Good afternoon, Your Honors. May it please the Court. I will be speaking on behalf of the U.S. Department of Transportation. My colleague, Mr. Saul, will be addressing the issues as to the nonfederal defendants. This case rises and falls on 4602 of the URA. That's the beginning of the case. That's the end of the case. The only issue is whether 4651, the Acquisition Guidelines and Policies, establish enforceable rights that can be remedied either through the APA, which is the claim against the federal defendant, or in addition, 1983, which is an additional claim against the nonfederal defendants. So the only claim against the U.S. Department of Transportation is the APA, and the only issue is are there enforceable rights that are created in 4651. Well, the determination of whether there's an enforceable right, if you should prevail on that argument, doesn't that defeat both the APA argument and the 1983? It defeats any cause of action that they choose to bring under any legal theory because 4602A is definitively clear. The provisions of 4651 create no rights, no liabilities. That is precisely the language, Judge Niemeyer, as you cited Gonzaga, that the Gonzaga Court, the Supreme Court says is the type of definitive language that says that Congress did not intend to create enforceable rights or allow judicial review of purported violations of those provisions. We would contend that whether it's 4651 or 4655, which I would suggest is actually a newly derived theory at this level that was not presented or argued at the district court. 4655 is, as Your Honor has pointed out, it's purely a funding statute. It's directed purely at the actions of the federal agencies and says you do not give federal money unless they say they will do this. 4655 doesn't add anything new to the equation. It goes back to 4651. And who gets to decide whether the state agencies have actually complied with the conditions for funding? The federal agencies. The Federal Highway Administration decides. Do they sanction states? They actually have the authority to pursue, to actually withdraw the funds or not provide any funds if there is a failure on that. Would they react in response to a complaint from a person adversely affected? I can't answer the question whether. Such as the plaintiff in this case. Well, we know there wasn't in this case until the lawsuit was filed a complaint. I mean, they didn't file an agency complaint and ask you to withdraw funds. There was never any agency complaint filed asking us to withdraw funds. And I'll call it generally a satisfactory assurances claim. This whole satisfactory assurances claim newly sprung in this court. This was not argued or litigated in the district court. It comes about, quite frankly, because of the ramifications of 4602A, which so clearly preclude a 4651 claim that the plaintiffs have to look elsewhere to try to find these rights. Hence, we have this argument that 4655 is the genesis of the rights against the city. It's not. 4651 are the guidelines and practices that apply an acquisition decision. And clearly, 4602A says there are no rights, there are no liabilities that spring from those provisions. And you can't bootstrap it back by coming to 4655. The Sixth Circuit and the Seventh Circuit, I believe the Sixth Circuit case is the consumer's power case, and the Seventh Circuit case is Rhodes v. City of Chicago. Both held that very thing. 4651 is barred because of 4602A. 4655 is barred because of 4602A. You can't bootstrap it. You can't create rights from a statute that has no rights simply by trying to come through the vehicle of another statute. And that's what the plaintiffs have tried to do here. There is one additional argument that the plaintiffs have made with respect to the Federal defendants, and that argument is that 4602A does not apply because the U.S. Department of Transportation is not the acquiring agency. Or, conversely, that 4602A applies only when it is the acquiring agency. Quite frankly, that's a different factual assertion that the plaintiffs, again, have created on appeal that was not before the District Court. The claim by the plaintiffs have always been that this is an all-for-one, one-for-all, city partners type of arrangement, that the actions of everybody is attributed to everybody else. So, factually, that's just a different theory that they are now articulating for the first time on appeal. However, if, in fact, the U.S. Department of Transportation is not the acquiring agency, which, in fact, it is not, then it begs the question of why should 4651 acquisition guidelines even be applicable to it. And, of course, then, again, the more fundamental problem is simply the plain the provisions of 4651 and not as to any particular individual or any particular party. It doesn't parse it out. It doesn't separate it. Your Honors, unless you have any further questions, I'll cede the balance of my time to Mr. Salk. All right. Mr. Salk. Good morning. May it please the Court, my name is Jeff Salk. I represent the conglomerate of the non-federal defendants. I think that Clear Sky asks the wrong question of this Court. As provocative as the issue of impunity is that he has raised in his briefs, the correct question is the one that's already been identified, and that is whether the Uniform Relocation Act provides any right for an individual. The two questions we need to ask before we even get to that, or once we look at those questions, are whether or not this Court has jurisdiction and whether or not Clear Sky has presented a cause of action. And we respectfully submit that as the District Court ruled, the plaintiff's case does neither. There is no right that is identified in the Uniform Relocation Act under the Gonzaga analysis or under the Delancia analysis, which actually follows or applies directly to the Uniform Relocation Act. There's no cause of action pled by the plaintiff under Section 1983, and there was no jurisdiction by the Court below. I should note that we are not here by the plaintiff seeking a review of agency action, which is one of the criteria which must be met for judicial review under the APA. There is no allegation by the plaintiff that he is appealing here or that he was appealing to the District Court in agency action whatsoever. This case boils down to the pure question of money, and it's the question of money, as the trial court, as the District Court noted, that comes from the acquisitions. It was the highlight of the plaintiff's allegations in its complaint. It was the complete focus of the allegations in the individual counts. And if you look, as an example, at Count 1 of the complaint, which deals specifically with URA, Clear Sky attempts to make a direct cause of action for damages under the URA, which is precluded. And in that Count 1, it says nothing whatsoever about either relocation assistance under 4625 or relocation payments under 4622. So we are not here on, nor were we below on any kind of an agency appeal. We are here purely as we were below on the question of whether or not there is a direct right of action under 4651, which has that list of nine criteria that Mr. Grass has identified and does so repeatedly. But none of those sections in 4651 address the question of a right. And that's the focus of the Gonzaga case, and that's the focus of the DeLancey case. Clear Sky wants to get around the clear language of 4602, which specifically limits any cause of action by attempting to circumvent it by way of section 4655. The Consumer Powers case from the Sixth Circuit directly addresses that and notes that it would be circuitous to say that the United States Congress granted first stated there would be no rights whatsoever under section 4651 and then turn around in section 4655 and say, oh, yes, but we will assert those rights and require those rights as to all 50 of the states. But it's interesting that Congress didn't say that. And one of the things we have to look at under the Gonzaga analysis is did Congress speak with a clear voice on this. And clearly Congress did not speak with a clear voice with regard to any independent cause of action under that section. It's also interesting to note that the district court in that same case, the Consumer Powers case noted that the court considered it a subterfuge to permit judicial review under section 4655 by granting rights under 4651 in violation of congressional intent. That's what we have here, an effort to bootstrap Clear Sky around the clear language of the 4602. Mr. Grass at one point argued that clearly Congress intended for at least the federal agencies to do something pre-taking in order to facilitate the process and minimize the cost to the litigants. And in his scenario, agencies are free to lowball the estimate on the front end because they know that that then requires the landowner to engage in litigation at its expense without the possibility of recovery of attorney's fees. And that's the hammer that the agencies have to extract an unreasonable settlement. What's the remedy, if any, for that? Your Honor, I think we first have to look to see whether Congress created a right that required a remedy. Merely because there is a violation of a federal statute does not mean that there is a violation of a federal right. I don't think that's the answer. Basically, the answer is they have no remedy. I'm sorry? They have no remedy, at least not under the statute. There is no remedy provided under the statute. There is a agency, pardon me, there is APA review, not under the acquisition section, but under the other sections. And so there is specific provision and intent by Congress to allow that review for relocation assistance, relocation payments. Right, but they didn't seek that, and I suppose it's because they weren't really interested in that. What they were interested in is getting what they claim to be a fair appraisal on the front end. And if they're deprived of that, essentially your position is, oh, well. Your Honor, I think that Congress intended there to be a remedy by allowing the federal agencies to withdraw or limit the funding to the individual states. And it was Congress's intent to avoid having these federal agencies, pardon me, it was Congress's intent to avoid individual litigation in all federal states, particularly against the backdrop of a long body of condemnation law. Are there remedies in their state law under certain circumstances where attorney's fees can be awarded? It's my understanding, Your Honor, that attorney's fees are available under state law in certain limited circumstances. In general condemnation cases, they would typically not be available, but that is the standard that we all deal with in most civil litigation. It is the standard certainly in Virginia under standard condemnation law. I think one of the, if I get this right, one of the exceptions is if there is an, I can't state it fairly, Your Honor. This sounded like it was under a quick take provision. It may have been under that. Determine the amount, put it into court, and then take the property. I believe it's that. But there are two or three limited situations where the attorney's fees are recoverable, and it's primarily if there is a, predominantly if the case just, if the court dismisses it out of hand so there's no foundation for it. In other words, they start the condemnation proceeding and then back out of it, and the city agency refuses to go forward with it. I think the attorney's fees, as an example, are recoverable in that circumstance. It sounds like they'd be recoverable against the landowner. Is that what you're saying? Recoverable against the condemnor, Your Honor. I thought you said that the landowner was refusing to go forward. No, I beg your pardon, Your Honor. If the condemnor, if the city, for example. Condemned something and then said it was wrong. And they decide to back out of it. I think it's my recollection that that is one of the exceptions, but there are a couple of others. All right. Thank you, Mr. Salk. Mr. Grass? Yes, Your Honor. Taking a couple of the key issues here, and then before getting back into 1983, the initial argument that you heard about 4602 killing 4655 is nothing less than the request that this Court reverse the City of Columbia v. Castle case. Because this Court said that the plain language of 4655 embodies, and this is a quote, embodies an unambiguous indication that Congress, after weighing various policy considerations, says that compliance with the procedures, the procedures, should not be left to the grant recipient's own judgment, that's the State, as to its economic best interests. We therefore conclude the State must comply with 4651 to the greatest extent legally possible under State law, notwithstanding that such compliance may be uneconomical. But it says nothing about a private cause of action. That's correct. But the question is, is there a right? In other words, if 4602- There's clearly a right for the Federal Government to withhold funds. No, no. Under 4602a, he said that there's no rights or liabilities under 4655, period. It doesn't matter who brings it. But this Court has already said, yes, unambiguously, 4655 creates the right. And what's fascinating, Your Honor, you heard them rely on consumers' power v. Castle, a Sixth Circuit decision, and you heard them admit, well, essentially the Court said, in not so many words, yes, 4655 does create a right, but that would be contrary to legislative intent. So we're not going to allow it. And this Court does not look at legislative intent. It looks at the plain language. I've briefed at length why I think the legislative intent makes very clear that 4655 was to create a right. But the first step, as Judge Niemeyer pointed out, is, is there a right? And this Court in the Fourth Circuit, on unambiguous language of 4655, says there is a right. The State must follow these considerations. Done. That's settled law. We're in the en banc hearing room, but that's the law in the Fourth Circuit. Then the question is, and this Castle case is, again, it's legislative intent. Throw that. Every other case that they have that says 4655 doesn't create a right, every one relies on a legislative history from a Missouri case, District Court case from 1975. Every case that Clear Sky relies on says the plain language of 4655 creates a right. There are two West Virginia Supreme Court cases. There's this Court's Fourth Circuit case. The Fourth Circuit case relies on several earlier District Court opinions from other jurisdictions. So we believe that there's no question about 4602 in the right. What language in Castle are you reading? I mean, the language that I have in front of me is it's unmistakable from the plain language of Section 4655 that the States must comply with the land acquisition procedures. That's not the same as saying that an individual has a right to enforce compliance. But the issue there is that 4655 creates an obligation for the State to provide these requirements. There's no question the statute says that. I don't think there's any disagreement about that. I'm sorry? I don't think there's any disagreement about that. The State has an obligation. Right. But you don't represent the State. Well, the State has not honored those obligations. And the question is, is there then an ability to seek relief? And, in fact, the Gonzaga – let me address before I get to Gonzaga. The question of whether an agency action could be filed is, frankly, a disingenuous argument. Under the regulations, 49 CFR 24.10 says what you can file an agency complaint about, and it's about the relocation assistance payments, period.  And so, again, the Fourth Circuit actually has case law on this cited in the brief that, yes, an issue of moving expenses, whether they've been paid, that's a separate issue. You have to exhaust an administrative appeal. But a dispute as to the interpretation of the statute, whether or not the satisfactory assurances have been actually received, whether the State is actually applying the requirements, all of that can be done immediately by an immediate action, which is what we filed. Now, the question in the Gonzaga case – well, let me go to Wilder first, which is one of the predicate cases to Gonzaga, which Gonzaga relied upon and reaffirmed. And in that case, the State must provide for payment of hospital services. It was a Medicare-related case, I believe. And the statute required that the State must make assurances satisfactory to the Secretary that the payments are reasonable and adequate to meet the costs. Okay? That's exactly the same situation here. The State must make assurances to the federal government, we're going to make payments that are reasonable and adequate. Okay? But what are they assuring? They're assuring that they'll provide for payment. And so the Supreme Court in Wilder said that's a 1983 right. You have a right to get payment. So, too, here, the State has to give assurances that it's going to provide the independent appraisal, that it's going to provide the proper deposit. And so there's the satisfactory assurances part, but it's what those assurances have to do is provide the appraisal. And Wilder is directly on point. So why is it, you know, what does Gonzaga change, if anything, related to that issue? In Gonzaga, the main issue was that there was a process for the injured party to follow. Well, first, the nondisclosure provisions in Gonzaga talked about institutional policy and practice, not individual instances of disclosure. Here, there are individual instances of appraisal that the State must assure that it's going to, in fact, provide to my client with particularity. So Gonzaga was different. It was just an institutional policy or practice of nondisclosure. And if the individual is injured in Gonzaga, there's an entire process for them to seek relief from the system to file a complaint and ask for the FERPA to find that there has been a violation of the policy or practice, and then a record can be created, and then FERPA can actually take action. Here, there's no avenue for us to file a complaint about the agency action. They have to give assurances, the States and the Federal Government, that these individual rights will be provided. That's what this Court said in the City of Columbia v. CASEL, that 4655 imposes that list of requirements on the State. So it is exactly in line with Gonzaga. Thank you, Mr. Grassley. We'll conclude for the day, and we'll come back for re-count.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Albert Diaz